

SO ORDERED.

SIGNED this 04 day of September, 2009.

Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| In re: | |
|---|---|
| JENNIFER ERIN LEE, | CASE NO. 08-40554-7 |
| DEBTOR. | CHAPTER 7 |

**OPINION DETERMINING WHAT PORTION OF THE VARIOUS PARTS OF THE DEBTOR'S 2008 FEDERAL AND STATE TAX REFUNDS ARE PROPERTY OF HER BANKRUPTCY ESTATE, AND THAT HER STATE FOOD SALES TAX REFUND WAS PROPERLY CLAIMED AS AND IS EXEMPT**

These matters are before the Court on the Chapter 7 Trustee's motion for turnover of part of the Debtor's federal and state tax refunds for 2008, and his objection to the Debtor's amended exemptions, which claim portions of the refunds are exempt under § 522(d)(10)(A) of the Bankruptcy Code. Trustee Robert L. Baer appears by counsel

John T. Houston. The Debtor appears by counsel Frank D. Taff. The parties submitted the matters for decision based on amended stipulations and opposing briefs. The Court has reviewed those materials, and is now ready to rule.

For her 2008 federal taxes, the Debtor qualified for an earned income credit, an additional child tax credit, and a recovery rebate credit. For her 2008 state taxes, she qualified for an earned income credit and a food sales tax refund. The Trustee contends the Debtor's interests in all these refunds must be apportioned equally over all the days of the year, and her estate is entitled to a fraction of each refund based on the number of days of the year that had passed before she filed for bankruptcy. The Debtor responds that no part of the additional child tax credit belongs to her estate, her earned income credit should be divided according to the fraction of her total income for the tax year that she had earned before she filed for bankruptcy, and the additional child tax credit and state food sales tax refund are exempt. The Trustee objects to the exemption claims. As explained below, the Court concludes all these credits and refunds became property of the Debtor's bankruptcy estate to the extent she had contingent interests in them on the day she filed for bankruptcy. Turning to the Debtor's exemption claims, the Court concludes (1) the Debtor's effort to exempt the additional child tax credit and the state food sales tax refund is not barred by her delay in claiming the exemptions; (2) the additional child tax credit is not exempt because it is not a "local public assistance benefit"; and (3) the Kansas food sales tax refund is exempt as a "local public assistance benefit." Finally, the Court determines the extent of the bankruptcy estate's share of the other credits, holding:

2

(1) the estate's share of the federal and state earned income credits should be determined by analyzing how the amount the Debtor qualified for would have changed during the tax year as she earned more money; (2) the estate's share of the additional child tax credit should be based on the Debtor's fraction-of-earned-income approach; and (3) the estate's share of the recovery rebate credit should be based on the Trustee's calendar-day-proration approach. The parties will need to consult to see whether they can agree how the Debtor's assignment of her refunds to pay her attorney fees should be accounted for.

**Facts**

The Debtor filed a Chapter 7 bankruptcy petition on April 30, 2008. In connection with that filing, she paid her attorney $250 and gave him assignments of her prospective income tax refunds and her prospective economic stimulus payment to cover the $700 balance of his fee. April 30 was the one hundred twenty-first day of 2008, a leap year. Up to that date, the Debtor had earned income of $3,320 for the year. For all of 2008, she had earned income of $16,579. She reported no investment income on her 2008 returns. On the day she filed for bankruptcy, her bank account had a balance of $36.33 in it. She does not dispute that the account balance belongs to the bankruptcy estate.

The Debtor filed her 2008 federal and state tax returns early in 2009, claiming four children as dependents. Based on her federal return, the IRS paid her an "earned income credit" of $4,648, an "additional child tax credit" of $1,212, and a "recovery rebate credit" of $1,500, for a total of $7,360, which was deposited into her bank account on January 30. Her state return showed she was entitled to an "earned income credit" of

$790 and a "food sales tax refund" of $234, for a total of $1,024. However, for reasons not known to the parties, on February 12, the Kansas Department of Revenue sent her only $914; the Court's review of the Debtor's return and the instructions for completing a 2008 Kansas return indicates the return was properly calculated, so the $110 reduction apparently came from something not reported on the return. The parties presented nothing to the Court indicating that the Debtor or her attorney knew before the 2008 tax returns were completed that the Debtor would qualify for any of these refunds.

On February 3, 2009, the Trustee filed a motion to require the Debtor to turn the $36.33 bank balance and the bankruptcy estate's share of her 2008 tax refunds over to him. He calculated the estate's share of the refunds by adding the $7360 refund shown on the federal return to the $1,024 shown on the state return, subtracting the $700 assigned to the Debtor's attorney, and multiplying that amount by 121/366 (slightly over 33%). That calculation suggested $2,540.34 of the refunds belongs to the estate.

The next day, the Debtor filed a response opposing the Trustee's turnover motion, suggesting the estate was only entitled to a much smaller portion of the refunds. She conceded the Tenth Circuit's decision in *In re Montgomery*[1] meant the estate was entitled to part of her earned income credits, but argued the estate's share should be limited to a fraction based on the portion of her earned income for the full year that she had received by the day she filed for bankruptcy. That is 3320/16579, or 20%, of her federal and state

---

[1] 224 F.3d 1193 (10th Cir. 2000).

earned income credits of $4,648 and $790, which gives a total of $1,087.60 instead of the $1,797.81 the Trustee's calculation gives. The Debtor argued the additional child tax credit, recovery rebate credit, and food sales tax refunds were not covered by the *Montgomery* decision, and should not belong to the bankruptcy estate. With respect to the additional child tax credit, she relied on *In re Schwarz*,[2] which held that credit does not come into existence until the end of the tax year, so it is property acquired after a bankruptcy filing that occurs during the tax year, and none of it belongs to the bankruptcy estate.

Two weeks after the Debtor filed her response, the Trustee filed a brief in support of his motion for turnover. The matter came up for hearing on March 26, and the Court set deadlines for the parties to file stipulations and briefs. They filed stipulations on April 16, but filed revised stipulations the next day. On May 1, the Debtor filed a brief in support of her opposition to turnover of the tax refunds. The Trustee chose not to file an additional brief on that matter.

Ten days after the revised stipulations were filed, on April 27, the Debtor filed amended exemptions, claiming for the first time that the $1,212 additional child tax credit and the $234 food sales tax credit were exempt under § 522(d)(10)(A)[3] of the Bankruptcy Code. The Trustee objected to the new exemptions on May 14, and the Debtor filed a

---

[2]314 B.R. 433, 436 (Bankr. D. Neb. 2004).

[3]The Debtor's attorney mistakenly wrote the citation as "522(b)(10)(A)," but the Trustee realized the "b" should be a "d" and addressed the correct provision in his brief.

5

response the next day. They subsequently informed the Court this dispute should also be decided based on the stipulations and other pleadings they have filed. The parties have also reported that the Debtor's attorney is holding some portion of the refunds in his trust account, pending the Court's ruling on their dispute.

**DISCUSSION**

The Trustee seeks turnover of portions of the Debtor's tax refunds under § 542(a). With exceptions not applicable here, the provision declares "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title . . . shall deliver to the trustee, and account for, such property or the value of such property." As the party seeking turnover, the Trustee has the burden of proving what property belongs to and therefore must be turned over to the estate.[4] Although the quality of proof required for turnover has sometimes been said to be clear and convincing, this Court believes that the Supreme Court's decision in *Grogan v. Garner*[5] makes clear the ordinary preponderance of the evidence standard should apply to most, if not all, bankruptcy disputes.[6]

**1. Are interests in the various parts of the Debtor's tax refunds property of the**

---

[4]*In re Amdura Corp.*, 75 F.3d 1447, 1451 (10th Cir. 1996) (Subsidiary seeking turnover of money in parent's bank account had burden of proving, by clear and convincing evidence, property was property of subsidiary's bankruptcy estate).

[5]498 U.S. 279, 286 (1991).

[6]*See In re Krause*, 2009 WL 243398, *slip op.* at 10-11 (Bankr. D. Kan. 2009) (noting 10th Circuit's statement in *Amdura* of clear and convincing standard for turnover action, but stating that view probably came from 1948 Supreme Court opinion under the old Bankruptcy Act, and concluding *Grogan* meant preponderance standard should apply to turnover under § 542).

6

**estate?**

This case concerns a variety of tax credits and a food sales tax refund that were paid to the Debtor even though she had no taxes withheld from her earnings during 2008. The Trustee contends the shares of the credits and the refund are all property of the estate because they are treated as refunds under federal and state tax law, and must be apportioned between the bankruptcy estate and the Debtor by a simple calendar-day proration. The Debtor concedes the Tenth Circuit ruled in *Montgomery* that the prepetition portions of the earned income credits belong to her bankruptcy estate,[7] but contends the proration should be based on the fraction of her earned income for the year that she had received by the time she filed for bankruptcy, and not on a calendar-day proration. She asserts that the recovery rebate credit should be treated the same way. The Debtor argues the additional child tax credit is different from the earned income credits and recovery rebate credit, though, and should be considered to be property acquired postpetition that all belongs to her, citing *In re Schwarz*.[8]

The Supreme Court and the Tenth Circuit have made clear that income tax refunds for the tax year during which a taxpayer files a Chapter 7 bankruptcy can and usually do include a part that is property of the bankruptcy estate.[9] Any portion properly attributable

---

[7] *See Montgomery*, 224 F.3d at 1194-95.

[8] 314 B.R. 433, 436 (Bankr. D. Neb. 2004).

[9] *Segal v. Rochelle*, 382 U.S. 375, 379-85 (1966); *Barowsky v. Serelson (In re Barowsky)*, 946 F.2d 1516, 1516-19 (10th Cir. 1991); *Montgomery*, 224 F.3d at 1194-95.

7

to the prepetition part of the tax year belongs to the estate, but any portion properly attributable to the postpetition part of the tax year belongs to the Chapter 7 debtor.[10] The Tenth Circuit held in *Montgomery* that a Chapter 7 debtor's contingent prepetition interest in the federal earned income credit for the year during which the debtor filed for bankruptcy belongs to the bankruptcy estate, although the Circuit did not rule on the proper way to prorate the earned income credit between the prepetition and postpetition parts of the year. The Kansas earned income credit is simply a fixed percentage of the federal one,[11] so the Circuit would most likely treat it the same as the federal one.

Although *Schwarz* did hold that the additional child tax credit was distinguishable from the earned income credit and was not property of the estate because it did not accrue until the end of a debtor's tax year, a number of courts (including the bankruptcy appellate panel for the circuit in which the *Schwarz* court is located) have rejected *Schwarz* and ruled instead that the additional child tax credit should be treated the same as the earned income credit for bankruptcy purposes.[12] The Court is convinced the Tenth

---

[10]*See, e.g., Christie v. Royal (In re Christie)*, 223 B.R. 110, 112-13 (10th Cir. BAP 1999) (tax overpayment made with postpetition earnings and loans belongs to Chapter 7 debtor, not to bankruptcy estate); *In re Schwinn*, 400 B.R 295, 303 (Bankr. D. Kan. 2009) (pro rata apportionment of tax refund according to days of year gives mere approximation of value of debtor's contingent interest as of date of bankruptcy filing, and does not apply when more accurate apportionment can be made); *In re Donnell*, 357 B.R. 386, 393-98 (Bankr. W.D. Tex. 2006) (debtor's interest in tax refunds on date of bankruptcy filing depends on source of refunds and debtor's rights to refunds under tax law).

[11]K.S.A. 2008 Supp. 79-32,205(a) (state credit is 17% of federal credit).

[12]*In re Law*, 336 B.R. 144, 146-47 (Bankr. W.D. Mo. 2005), *aff'd* 336 B.R. 780, 783 (8th Cir. BAP 2006); *In re Minton*, 348 B.R. 467, 473-75 (Bankr. S.D. Ohio 2006); *In re Griffin*, 339 B.R. 900, 902 (Bankr. E.D. Ky. 2006); *In re Matthews*, 380 B.R. 602,607 (Bankr. M.D. Fla. 2007); *see also In re Donnell*, 357 B.R. 386, 400-04 (Bankr. W.D. Tex. 2006) (declaring neither *Schwarz* nor *Law* analyses of additional child tax credit as property of estate were satisfying).

8

Circuit would rule the prepetition portion of the additional child tax credit is property of the bankruptcy estate, just as it ruled in *Montgomery* about the earned income credit. The *Schwarz* court's reasons for reaching a different conclusion were essentially the same as those the Circuit rejected in *Montgomery*.

Finally, the Court sees nothing about the Kansas food sales tax refund that would justify treating it differently than the earned income credit, and concludes the Tenth Circuit would apply its *Montgomery* reasoning to this refund.

The Court concludes any portion of the Debtor's various credits that is properly attributable to the prepetition part of her tax year belongs to her bankruptcy estate. However, property of the estate that is properly exempted leaves the bankruptcy estate and returns to the Debtor, so the Court will address the Debtor's exemption claims before determining the proper division of the various non-exempt facets of the Debtor's tax refunds between her and the bankruptcy estate.

2. **The Debtor's Claims to Exempt the Additional Child Tax Credit and the Kansas Food Sales Tax Credit**

The Debtor claims the additional child tax credit and the Kansas food sales tax refund are exempt under § 522(d)(10)(A) as "local public assistance benefit[s]." As a preliminary matter, the Trustee contends these exemption claims should be barred because the Debtor did not assert them until a year after she filed her bankruptcy petition. But the Trustee has presented nothing suggesting the Debtor or her attorney knew before her 2008 tax returns were prepared in January 2009 that she would be entitled to either

9

the credit or the refund for 2008. This means her actual delay in claiming the exemptions was at most about three months. During those months, the Debtor's opposition to the Trustee's claim that a portion of the additional child tax credit belonged to the estate and his method of calculating the estate's share of the earned income credits was already requiring the Trustee to file pleadings with the Court. Her subsequent assertion of the exemption claims does not appear to have created significantly more work for the Trustee. Under the circumstances, the Court does not believe the Trustee has shown the Debtor's delay in asserting the exemption claims should bar the claims.

The additional child tax credit is a federal credit. Even if the credit might qualify as a "public assistance benefit," the exemption under § 522(d)(10(A) is limited to "local" benefits, and a federal benefit cannot be considered to be a "local" benefit.[13] Consequently, the Debtor cannot exempt the additional child tax credit under § 522(d)(10)(A).

A state benefit like the Kansas food sales tax refund can qualify as "local," though, so the Court must decide whether that refund qualifies as a "public assistance benefit." In 2006, another bankruptcy judge in the District of Kansas considered the meaning of that phrase in § 522(d)(10)(A), and concluded "public assistance benefit" means "government

---

[13]*See In re Fraire*, Case No. 94-12184-7, Order Granting Trustee's Motion for Turnover (docket no. 32), *slip op.* at 10-11 (Bankr. D. Kan. June 19, 1996) ("local public assistance" under § 522(d)(10) clearly limited to benefits from state, county, or municipality, so federal earned income credit does not qualify) (Note: single opinion entered in several cases, including *In re Zientek*, Case No. 95-10604-7, cited by Trustee); *see also In re Demars*, 279 B.R. 548, 550-52 (Bankr. W.D. Mo. 2002) (federal earned income credit not exempt under Missouri statute because not "local" public assistance benefit); *In re Geortz*, 202 B.R. 614, 617-18 (Bankr. W.D. Mo. 1996) (same).

10

aid to needy, blind, aged, or disabled persons and to dependent children."[14] The Court believes this to be a reasonable definition and hereby adopts it.

To qualify for the Kansas food sales tax refund for 2008, a taxpayer had to (1) be domiciled in Kansas for the entire tax year; (2) (a) be 55 years of age or older, (b) be totally and permanently disabled or blind, or (c) have a dependent child under age 18 who lived with the taxpayer the entire year; and (3) have "qualifying income"[15] of $30,300 or less for the year. For 2008, the Kansas food sales tax refund was a refundable tax credit of $80 per exemption for a taxpayer with qualifying income from $0 to $15,150, and $39 per exemption for a taxpayer with qualifying income from $15,151 to $30,300.[16] On her state return, the Debtor claimed one exemption for herself, one for each of her four children, and one more because she was filing as head of a household. The six exemptions times the $39 gave her a total food sales tax refund of $234. Clearly, this refund program provided government aid of the kind required for it to constitute a "public assistance benefit." The Court concludes the Debtor has properly exempted the Kansas food sales tax refund under § 522(d)(10)(A).

3. **Allocating the Federal and State Earned Income Credits between the Bankruptcy Estate and the Debtor**

---

[14]*In re Hutchinson*, 354 B.R. 523, 529-30 (Bankr. D. Kan. 2006) (Karlin, J.).

[15]For the Debtor in this case, her "qualifying income" was the same as her federal adjusted gross income.

[16]*See* 2008 Kansas Individual Income Tax & Food Sales Tax Refund Forms and Instructions at 19, Instructions for Line 25 of Form K-40; *see also* K.S.A. 2008 Supp. 79-3633(c) & 79-3635.

11

The Trustee contends the federal and state earned income credits must be divided between the estate's prepetition share and the Debtor's postpetition share through a simple calendar-day proration. Under this approach, the number of days of the year that had passed before the Debtor filed her bankruptcy petition is divided by the total number of days in the year, and the result is multiplied by the amount of the credits to arrive at the estate's share. This approach would be acceptable if the credits were directly tied to the number of days in the year, or there were no evidence to suggest any other method more accurately values the Debtor's prepetition interests in the credits. As this Court explained in *Schwinn*, however, the calendar-day proration approach gives merely an approximation of the value of the Debtor's contingent interests in the credits on the day she filed for bankruptcy, and a different approach can be proper based on all the circumstances when a more accurate allocation is possible.[17] Since the earned income credits are tied to the Debtor's earned income, rather than to the days of the year, the Debtor's proposed method of allocation would be preferable to the Trustee's method. But a review of an IRS publication about the federal earned income credit makes clear the credit is not based on a simple fixed percentage of a taxpayer's earned income, the situation when the Debtor's proposed method would make the most sense.

According to IRS Publication 596 for the 2008 tax year, a taxpayer like the Debtor, filing as a head of household with earned income and more than one qualifying child

---

[17]400 B.R. at 303.

would have qualified for a gradually increasing federal earned income credit until her earned income fell between $12,050 and $12,100.[18] At that point, the credit would have equaled nearly 40% of the taxpayer's earned income. However, as the taxpayer's income continued to increase, the credit would have stayed at $4,824 until the taxpayer's earned income reached $15,750. Beyond that level, the credit would have steadily decreased as the taxpayer's income increased.[19]

If the Debtor had earned no further income during 2008 after she filed for bankruptcy, her income of $3,320 up to that time would have qualified her for a federal earned income credit of $1,330. Since she earned more income during the rest of the year, however, her credit increased until she reached the thresholds just noted, and then began to decrease once her total for the year exceeded $15,750. Rather than basing the bankruptcy estate's share of the Debtor's earned income credit on some ratio of her prepetition earned income to postpetition earned income, the Court believes it is more appropriate to calculate it by determining the earned income credits she would have qualified for based on her prepetition income alone and on her postpetition income alone, and comparing those amounts to the credit she actually received.

---

[18]IRS Publication 596, "Earned Income Credit (EIC)" at 42-49 (for use in preparing 2008 returns).

[19]In addition, a taxpayer's investment income can affect the amount of her earned income credit, either reducing it or eliminating it entirely. *See* IRS Pub. 596 for 2008 at 7 and 31-32 (Example 1, which shows investment income can reduce taxpayer's earned income credit). For a taxpayer who, like the Debtor, filed a Form 1040A tax return, investment income includes taxable interest, tax-exempt interest, ordinary dividends, and capital gain distributions. *Id.* That possibility has no effect on this case, though, because the Debtor had no investment income for 2008.

13

After she filed for bankruptcy, the Debtor earned another $13,259 in 2008. If she had not had any income during the pre-bankruptcy part of the year, she would have qualified for a federal earned income credit of $4,824, the maximum possible credit. But adding her pre-bankruptcy income to her post-bankruptcy income caused her earned income credit to fall to $4,648, a reduction of $176. The Court believes it is appropriate to attribute some of this reduction in the Debtor's credit to the prepetition period and some to the postpetition period. The Debtor's prepetition income can be viewed as having generated 27.57% of the maximum earned income credit she could have received (1330/4824). Applying that percentage to the amount she actually received ($4,648) suggests $1,281.45 of her earned income credit is attributable to the income she earned before she filed for bankruptcy. The Court therefore concludes the bankruptcy estate's share of her federal earned income credit is $1,281.45.

The Trustee correctly notes that the Kansas earned income credit is simply 17% of the federal credit.[20] Since the state credit is directly based on the federal one, the Court will apportion the state credit the same way it did the federal one, and multiply the Debtor's $790 state earned income credit by 27.57% to arrive at the portion attributable to her prepetition income. That gives $217.80 as the estate's potential share of the state earned income credit. However, the state sent the Debtor $110 less than her return showed she should receive, and the parties have stipulated they do not know why her

---

[20] See K.S.A. 2007 Supp. 79-32,205(a).

14

Case 08-40554    Doc# 44    Filed 09/04/09    Page 14 of 18

refund was reduced. As the party with the burden of proof, the Trustee was obliged to show what the estate's share of the refund should be. Since he failed to present evidence indicating any of the $110 reduction came from either the postpetition portion of the state earned income credit or the food sales tax refund the Debtor exempted, the $110 must be deducted from the amount that would otherwise be the estate's share, leaving $107.80 as the estate's share of the Debtor's state refund.

4. **Allocating the Additional Child Tax Credit between the Bankruptcy Estate and the Debtor**

The method for determining a taxpayer's eligibility for a child tax credit or an additional child tax credit for 2008 is complicated. Since the Debtor filed her return on IRS Form 1040A, the instructions for using that form, coupled with the Debtor's 2008 federal tax return, which figured her additional child tax credit on IRS Form 8812, guide the Court's analysis here.[21] A review of the instructions and the form reveal that, although different calculations could have determined the amount of the additional child tax credit if the Debtor's circumstances had been different, her credit turned out to be controlled by this calculation: $8,500 was subtracted from her adjusted gross income of $16,579, and the result ($8,079) was multiplied by 15% (or .15), which gave $1,212. In other words, the Debtor's additional child tax credit of $1,212 was fifteen percent of her earned income in excess of $8,500.

---

[21]*See* IRS Instructions for Form 1040A for 2008 at 37-38 & 53.

15

Because the credit turned out to be strictly a percentage of the Debtor's earned income for the year to the extent it exceeded a set amount, her suggestion to divide the earned income credit based on the percentage of income she earned before she filed for bankruptcy makes more sense for this credit than it did for the earned income credit. Since her pre-bankruptcy earned income was 20% of her total earned income for the year, it is logical to consider the pre-bankruptcy income to have produced 20% of this credit, or $242.40. The Court concludes that is the estate's share of the Debtor's additional child tax credit.

**5.      Allocating the Recovery Rebate Credit between the Bankruptcy Estate and the Debtor**

Directions and a worksheet for determining a taxpayer's eligibility for a recovery rebate credit for 2008 are also found in the Instructions for Form 1040A.[22] The worksheet shows that to receive a recovery rebate credit, the Debtor had to have at least $3,000 in qualifying earned income but adjusted gross income of less than $75,000 for 2008; for the Debtor, both her qualifying earned income and her adjusted gross income were $16,579. If her income had been below $3,000, she would not have been entitled to any recovery rebate credit. If her income had been more than $75,000, her eligibility for the credit would have begun to go down, and eventually been eliminated entirely. Because her income fell between these thresholds, she qualified for a $300 credit for herself, and

---

[22]Instructions at 53-54 & step 5 of worksheet at 42.

another $300 for each of her four qualifying children, giving a total recovery rebate credit of $1,500. The credit would also have been reduced if the Debtor had received any economic stimulus payment during 2008, but the Debtor claimed the full $1,500 on her federal return. The Debtor reported on her Statement of Financial Affairs that she had only $2,574 in earned income during 2007, so, assuming the same minimum income was required to qualify for a stimulus payment as for the recovery rebate credit, she would not have qualified for any stimulus payment during 2008, and that is why her recovery rebate credit was not reduced.

This credit does not correlate to any great degree with the Debtor's earned income. Her pre-bankruptcy earnings were enough to qualify her for the full credit, and her full-year earnings were well short of the disqualifying threshold. Unlike the earned income credit, the amount of the recovery rebate credit would have been the same for the full range of earned income from $3,000 to $75,000. The Debtor earned enough before filing for bankruptcy to be eligible for a $1,500 credit, but it would have been possible for her to earn enough more income during the post-bankruptcy part of 2008 to reduce or eliminate that eligibility. Under these circumstances, the Court believes the most equitable approach is to apply the calendar-day-proration rule and prorate this credit equally over the entire year. No other approach seems proper since the amount of the credit is only minimally related to the Debtor's earned income and did not change as her total earned income increased during the year. The Court therefore concludes the estate's share is 121/366ths of the $1,500 credit, or $495.90.

17

Case 08-40554    Doc# 44    Filed 09/04/09    Page 17 of 18

**Conclusion**

For these reasons, the Court concludes the bankruptcy estate's share of the Debtor's federal earned income credit is $1,281.45, its share of her additional child tax credit is $242.40, and its share of her recovery rebate credit is $495.90. The estate's share of the state earned income credit would have been $217.80, but the Trustee failed to satisfy his burden to prove any of the $110 reduction in the refund the state sent the Debtor is properly chargeable against either her share of the state earned income credit or her exempt food sales tax refund, so he has only shown she might be obliged to turn over up to $107.80 from her state refund. Of course, the estate is entitled to the $36.33 that was in the Debtor's bank account on the day she filed for bankruptcy.

However, because the Court has concluded different methods of allocation should be applied to various facets of the Debtor's refunds and part of the state refund is exempt, the Court will give the parties an opportunity to address how the $700 attorney fee should be charged against the refunds. The parties should confer and advise the Court whether, given the rulings made in this opinion, they can agree how much the Debtor must turn over to the estate. If they can, they should submit an agreed order specifying the amount; if not, they should advise the Court of the grounds for their dispute. In either event, they should inform the Court of the result of their consultation within 30 days.

# # #